STATE OF NEBRASKA, APPELLEE, V. STEVEN J. HOGAN,
APPELLANT.
231 N. W. 2d 135

Filed June 26, 1975. No. 39871.

Healey, Healey, Brown, Wieland & Burchard, for appellant.

Paul L. Douglas, Attorney General, and Jerold V. Fennell, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

McCOWN, J.

The defendant, Steven J. Hogan, was found guilty by a jury on one count of possession of cocaine and one count of possession of marijuana. The District Court sentenced him to 90 days in the county jail on the first count and 5 days on the second count, and this appeal followed.

In late February 1974, in a "usual examination" of foreign mail by the Bureau of Customs at the Port of New York, a letter was opened. The letter had been mailed in Bogota, Colombia, and the sender's name and address were shown as Leonard Russell, Hotel Dann, Bogota, Colombia. The letter was addressed to Steven Hogan, 551 East 26th Street, Kearney, Nebraska. Examination and test disclosed 3 grams of cocaine concealed in the lettter. The letter was then sent to a postal inspector in Nebraska under controlled delivery. The inspector, with the assistance of the Nebraska State Patrol, arranged for the letter to be delivered to the defendant by a regular postman. An investigator for the state patrol then executed an affidavit for a search warrant. The affidavit recited that the affiant had been informed by the postal inspector that official information had been received from the Bureau of Customs that the envelope addressed to the defendant had been inspected and that the envelope contained cocaine. It also recited that the envelope would be delivered at the defendant's address at approximately 1:30 p.m. on March 7, 1974,

and requested the issuance of a no-knock search warrant. On the basis of the affidavit the county judge of Buffalo County duly issued a no-knock search warrant shortly before noon on March 7. The defendant has raised no issue as to the sufficiency of the affidavit or of the search warrant obtained.

Officers maintained surveillance of the defendant's residence thereafter. The letter was duly delivered and at about 3 p.m., the defendant picked up the letter and took it into the house. After waiting approximately 5 minutes, officers broke the door and entered the house. The defendant was standing in a doorway down the hall with a holstered gun in his hand. He put the gun down when he was advised they were police officers and was cooperative with the officers thereafter. The letter was found on the kitchen table unopened. The defendant was asked to open it but declined, although he consented to the postal inspector opening it. It was opened, and contained a little over 1 gram of cocaine. The letter also gave instructions as to cutting the contents, and said that the writer would settle up with the defendant when he got back. Some marijuana and other materials, including some other letters, were also seized in the search. Defendant denied knowing any Leonard Russell and denied having knowledge of the presence of cocaine in the letter addressed to him.

Prior to trial, at the hearing on the motion to suppress, neither side offered any oral testimony. The defendant offered three exhibits, the letter addressed to him containing the cocaine; a chain-of-custody letter used by customs officers in tracing contraband to the place of delivery; and the affidavit and search warrant involved here. The defense also introduced a portion of the testimony of the postal inspector at the preliminary hearing. That testimony had been that there was nothing unusual about the appearance or weight of the critical letter. The State offered no evidence at the hearing

on the motion to suppress. The motion was overruled and the trial proceeded thereafter.

At the conclusion of the prosecution's case, the trial court overruled defendant's motion to dismiss but changed count II, involving marijuana, to a charge of simple possession rather than possession with intent to deliver.

The defendant's testimony was that he had no knowledge of the cocaine, and defendant's evidence tended to place responsibility on his absent roommate, one Lynn Jensen. The defendant's mother stated that Lynn Jensen was in Colombia, South America, at the time of the defendant's arrest. The defendant admitted that he had received two letters from Colombia prior to the critical letter. One was addressed to him and one to Lynn Jensen, and that he had opened and read both letters. He denied any agreement to receive contraband or any knowledge that contraband or cocaine was to be sent to him. He did admit that some of the marijuana found was his.

The jury found the defendant guilty on both counts. He was sentenced to 90 days in the county jail on count I and 5 days on count II.

The defendant's major contention on appeal is that the motion to suppress was erroneously overruled. The defendant tacitly concedes that the affidavit for the search warrant here was more than sufficient to justify the issuance of the warrant. He only attacks the search warrant indirectly on the ground that the affidavit and the evidence show that the information from the Bureau of Customs, which was the foundation information for the issuance of the search warrant, was obtained by means of a customs border search which was conducted without a warrant. The defendant then takes the position that the search and seizure here was consequently a search and seizure without a warrant which requires the prosecution to prove all the facts necessary to establish that the border search was legally authorized and reasonable

instead of requiring the defendant to prove that the search and seizure in Nebraska and at the border were legally unauthorized and unreasonable. The argument is that in the absence of testimony that the customs inspector had a reasonable suspicion or articulable reason for opening the letter addressed to the defendant, the search being without a warrant must be presumed to be illegal and unreasonable and that it poisons the tree and destroys the fruits of any search or seizure thereafter. The argument is ingenious but unsupportable.

It is well settled that a customs officer has the unique power to stop a person at an international entry point and to conduct a "border search" of persons or mail without having a search warrant, or even having probable cause to believe a crime has been committed. Reasonable suspicion of possible illegal activity is sufficient. See, 19 U. S. C., § 482; 39 C. F. R., § 61.1; United States v. Doe, 472 F. 2d 982, cert. den. 411 U. S. 969, 93 S. Ct. 2160, 36 L. Ed. 2d 691; United States v. Beckley, 335 F. 2d 86. Standards applicable to mail moving entirely within the United States are not applicable to mail coming from outside the country, and for customs purposes, mail sorting rooms at a port of entry can be treated as a border crossing. See, United States v. Sohnen, 298 F. Supp. 51 (1969); United States v. Various Articles of Obscene Merchandise, 363 F. Supp. 165 (1973). Border searches are distinctly different from other types of searches. Nevertheless, the defendant seeks to equate such a border search with all other warrantless searches in order to argue that it comes under the general rule that a warrantless search is presumptively illegal. A border search is not presumptively illegal, even though it is conducted without a warrant. If any presumption is to be imposed with respect to a border search, it would be that such a search is presumptively legal. In any event, the rule has been clearly and definitely established that a defendant who seeks to suppress evidence obtained under a legally issued search warrant has the

burden of establishing that the search was improper, and that the evidence secured thereby should be suppressed. United States v. Wright, 468 F. 2d 1184; United States v. McDonnell, 315 F. Supp. 152 (Neb., 1970); Chin Kay v. United States, 311 F. 2d 317.

Where an affidavit for a validly issued search warrant discloses that the underlying information upon which probable cause rests was obtained from the United States Bureau of Customs as the result of a warrantless "border search," the burden is on the defendant to establish that the border search was improper, and that the evidence secured thereby should be suppressed. The defendant's only evidence here however was the testimony of the Nebraska postal inspector at the preliminary hearing that there was nothing unusual about the appearance or weight of the letter. The same inspector at trial, however, testified that it was unusual in that it had a certain amount of thickness compared to normal letters, and that you could tell the difference. Even if we ignore presumptions, there is sufficient evidence that the customs inspector had ground for reasonable suspicion of possible illegal activity. The motion to suppress was properly overruled.

The defendant contends that four letters designated as exhibits 3, 6, 7, and 8 were hearsay and therefore incompetent and inadmissible. Exhibit 3, the letter containing the cocaine, was not objected to at trial and it is unnecessary to consider the issue of its admissibility. The failure to object promptly to an offer of evidence waives the objection. State v. Huerta, 191 Neb. 280, 214 N. W. 2d 613.

Exhibit 6 was a letter from Leonard Jensen in Bogota, Colombia, addressed to the defendant; and exhibit 7 was a letter written by the same individual who wrote exhibit 3 and addressed to Miss Lynn Jensen at the defendant's address and was also mailed from Bogota, Colombia. The defendant conceded that he had opened and read both exhibits 6 and 7 prior to receiving exhibit

3. These letters were not offered to prove the truth of their contents but rather to show the defendant's knowledge of the identity of one Leonard Russell and of his presence in Bogota, Colombia; and also defendant's knowledge of the terminology of drug use. A written extrajudicial utterance may be admissible in evidence to prove the truth of the assertion made if one of the many exceptions to the hearsay rule is satisfied, or it may be admissible in evidence without regard to the truth of the assertion made for its nontestimonial value as a circumstance, provided it is legally relevant. The hearsay rule does not apply to the latter use. See, 6 Wigmore (3d Ed.), §§ 1788 to 1792, pp. 234 to 240; Phenix v. State, 488 S. W. 2d 759 (Tex Cr. App.). Exhibits 6 and 7 here were properly admitted.

Exhibit 8 is an envelope containing defendant's checking account statement from his bank for the period of January 14, 1974, to February 11, 1974. This exhibit was received with no foundation and there is simply no testimony in the record to support its relevancy. While the trial court should have excluded exhibit 8, there is nothing unusual about it or the information in it, except that it was irrelevant. While exhibit 8 was improperly received, its admission could not have been prejudicial to the defendant. Errors in rulings on the admissibility of evidence, which do not injuriously affect the substantial rights of an accused, are not grounds for reversal. State v. Stroh, 181 Neb. 24, 146 N. W. 2d 756.

The defendant also contends that the admission of defendant's handgun into evidence was erroneous because it was irrelevant and was an attempt to arouse the prejudice of the jury against the defendant. No relevancy for the admission of the handgun appears. The testimony with respect to its possession and use by the defendant in his own house was innocuous. Its admission cannot be said to be prejudicially erroneous. It is quite clear that while this handgun should not have been admitted into evidence, its admission did not in-

juriously affect any substantial rights of the accused and does not constitute any valid ground for reversal. State v. Stroh, *supra*.

The final contention of the defendant is that the trial court could not amend count II to charge a distinctly different crime than that originally charged. In this case the court amended count II from a charge of possession of marijuana with intent to deliver, to a charge of simple possession of marijuana. The action, for all practical purposes, withdrew from the jury the issue of whether or not the possession was with intent to deliver. While a court has no power to dismiss a part of an offense or direct a verdict of acquittal on one or more degrees of a crime, an attempt to do so will be treated as withdrawing the issue from consideration by the jury. A trial court is bound to submit to the jury only such degrees of the crime as find support in the evidence. See State v. Hutter, 145 Neb. 798, 18 N. W. 2d 203. Here the evidence did not support the charge of possession of marijuana with intent to deliver and the court was fully justified in withdrawing the issue of intent to deliver from the jury. The offenses involved were based upon the possession of marijuana at a given time and place and the change in the charge could not have created any confusion as to the nature and cause of the accusation nor created any difficulty in defending against it. The action was clearly to the defendant's benefit and his contention of error is unsupportable.

The judgment of the District Court was correct and is affirmed.

AFFIRMED.